**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CALVIN ROBINSON,** | ) | **CASE NO. 1:16CV1455** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **CITY OF CLEVELAND, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #14) of Defendants, City of Cleveland, Michael McGrath and Angelo Calvillo, for Summary Judgment. For the following reasons, the Motion is granted.

**I. FACTUAL BACKGROUND**

Plaintiff, Calvin Robinson, is an African American male who was employed by the City of Cleveland as a fire fighter from April 1991 until his termination on May 13, 2014. He brings this Complaint for race discrimination against the City; the Director of Public Safety, Michael McGrath; and the Chief of Fire, Angelo Calvillo, pursuant to the Fourteenth Amendment and Ohio Revised Code 4112.

Article XI of the Collective Bargaining Agreement ("CBA") between the Fire Fighters Union, Local 93 and the City provides that two fire fighters of equal rank may exchange shifts (of no less than four-hour increments) but the exchange of time must be repaid within one year. On July 20, 2011, interim Fire Chief Timothy O'Toole issued a memorandum to Plaintiff, advising him that, due to the significant disparity between trade hours taken and trade hours repaid, Plaintiff was no longer authorized to engage in any trade of time within the Division of Fire. After the completion of an internal audit and a 2012 investigation, thirteen fire fighters were identified as abusing the shift-trading policy. The investigative report showed that Plaintiff owed 10,098 hours in unrepaid trades for the years between 2006 and mid-July, 2011. Tellingly, Plaintiff worked only 32 hours between January 1, 2009 and July 21, 2011. The next highest trade deficit among the fire fighters under investigation was 5,308 hours for the period between 2006 and 2011. Of the thirteen fire fighters singled out, Plaintiff was the only African American.

The Internal Affairs investigation also revealed that Plaintiff paid other fire fighters to work his normally assigned shifts, with no intention of repaying the time. In addition, Plaintiff was paid for secondary employment with the Cleveland Metropolitan School District for some of the same dates for which he was paid by the Division of Fire and without the required written permission of the Chief of the Division and the Director of Public Safety. Further, Plaintiff's training records were not properly maintained and hours of training accredited to him were not actually completed.

The matter was turned over to the Cuyahoga County Prosecutor. On May 15, 2013, thirteen fire fighters were indicted for Theft in Office and Receiving Improper Compensation,

both felonies. Plaintiff was the only African American fire fighter indicted.

In February 2014, twelve of the fire fighters, excluding Plaintiff, entered guilty pleas to a First Degree Misdemeanor offense, Complicity to Solicit or Receive Improper Compensation. On April 10, 2014, Plaintiff entered a plea of guilty to the same First Degree Misdemeanor. All of the fire fighters received a suspended six-month criminal sentence.

The City scheduled pre-disciplinary hearings. The twelve Caucasian fire fighters received nine-month unpaid suspensions and were restricted in their ability to bid for assignments/transfers and to engage in shift trades.

A pre-disciplinary hearing regarding Plaintiff was conducted in the Office of the Director of Public Safety on April 22, 2014. Plaintiff was represented by Union Local 93, acknowledged receipt of the administrative charges, waived reading of the charges and entered a plea of "no contest." On May 13, 2014, Director McGrath issued a decision (ECF DKT #14-14) finding Plaintiff guilty of all but one charge and terminating Plaintiff from his position with the City of Cleveland Division of Fire effective immediately. Specifically, McGrath's decision stated:

> It is difficult for me to grasp the incomprehensible amount of time in which you failed to carry out your sworn duties. The audits and subsequent investigations revealed that between 2006 and 2011 you had a shift trade imbalance of over 10,000 hours. The egregious manner in which you violated the trust of your fellow firefighters demonstrates a complete lack of integrity. Finally, the citizens of the City of Cleveland expect and deserve a full and complete effort from all of us. You failed in every way. *Id*.

Plaintiff grieved his termination through the Union. Pursuant to the CBA, the grievance was submitted to arbitration and a hearing was held on December 2, 2014. On May 15, 2015, the Arbitrator denied the grievance and found that the City proved by clear and

convincing evidence that Plaintiff was discharged for just cause.

On May 12, 2016, Plaintiff commenced this action in Cuyahoga County Common Pleas Court. Defendants removed the suit on June 13, 2016 on the basis of federal question jurisdiction. Plaintiff alleges that of the thirteen fire fighters singled out for abusing the shift trading policy, Plaintiff was the only African American. Plaintiff was the only one terminated; while the others received suspensions and retained their jobs. According to Plaintiff, all thirteen fire fighters were similarly situated. They were all employed by the City of Cleveland. They all reported to Fire Chief Calvillo and Director McGrath. They were all involved in the same shift trading practice; yet Plaintiff was subjected to disparate treatment. Defendants' actions were, therefore, racially discriminatory.

Defendants move for judgment in their favor, contending that Plaintiff has no evidence of race discrimination, that Plaintiff cannot prove discriminatory animus on the part of the individual Defendants, Calvillo and McGrath, that his comparators are not similarly situated, and that the City's legitimate reason for terminating Plaintiff was not pretextual.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir.1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Employment discrimination**

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a),

42 U.S.C. §1981 states in pertinent part: "[a]ll persons ... shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. §1981 prohibits intentional race discrimination in the making and enforcing of contracts with public and private actors. Section 101 of the Civil Rights Act of 1991, Pub. Law No. 102-106, 105 Stat. 1071 (1991), expands the scope of §1981 to encompass racial discrimination during the entire contractual relationship, including discrimination in the workplace, and is applied prospectively only. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 (1994). Section 102 of the Act allows for compensatory and punitive damages as well as for the right to a jury trial for such claims.

The Sixth Circuit has held that "[t]he elements of [a] *prima facie* case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and 1981." *Aquino v. Honda of America, Inc.,* 158 F.App'x 667, 674 (6th Cir. 2005); see also *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

Moreover, the Ohio Supreme Court holds that federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., is applicable to cases involving alleged violations of R.C. Chapter 4112. *Plumbers & Steamfitters Comm. v. Ohio Civil Rights Comm*., 66 Ohio St.2d 192, 196 (1981). Therefore, the Court will analyze Plaintiff's federal and state claims under the same framework.

"In order to establish a Title VII employment discrimination claim, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-865 (6th Cir. 2003). Plaintiff Robinson does not offer any direct evidence of discrimination. Instead, he acknowledges the applicability of the evidentiary framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). (Plaintiff's Memorandum in Opposition, ECF DKT #18-1 at 13).

To establish a prima facie case for race-based discrimination in violation of Title VII, a plaintiff must show: "(1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than he." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). The burden at the prima facie stage is not an onerous one, and it is easily met. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000).

Upon a prima facie showing of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the employer's actions. *Burdine*, 450 U.S. at 253.

"[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id*. At this stage,

"the burden of producing evidence of pretext essentially merges with the burden of persuasion, which always lies with the plaintiff." *Gragg v. Somerset Technical Coll.*, 373 F.3d 763, 768 (6th Cir. 2004) (quoting *Wilkins v. Eaton Corp.*, 790 F.3d 515, 522 (6th Cir. 1986)). A plaintiff may demonstrate pretext by showing that the defendant's proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (2003) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

"For purposes of establishing pretext, a plaintiff must show more than a dispute over the facts upon which the [adverse action] is based." *Kumar v. Aldrich Chemical*, 911 F.Supp.2d 571, 589 (S.D. Ohio 2012) citing *Abdulnour v. Campbell Soup Co.*, 502 F.3d 496, 502 (6th Cir. 2007). A plaintiff must "put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). So long as an employer honestly believed its proffered reason, an employee cannot show pretext, even if the facts are later shown to be incorrect. *Segel v. Kimberly-Clark Corp.*, 473 F.App'x 416, 421 (6th Cir. 2012); *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). "[A]bsent a showing that [Defendants'] 'explanations are inherently suspect' or 'other direct or circumstantial evidence suggesting that the proffered reasons are not true,' summary judgment is appropriate." *Thompson v. Ohio State University*, 639 F.App'x. 333, 341-42 (6th Cir. 2016) (quoting *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 438 (6th Cir. 2002)).

Here, Defendants do not dispute that Plaintiff can establish the first three prongs of his

prima facie case: that he is a member of a protected class; that he suffered an adverse employment action; and that he was qualified for the position. However, they vigorously dispute that Plaintiff has shown that a similarly-situated employee outside the protected class was treated more favorably than he.

Plaintiff maintains that he and the twelve Caucasian fire fighters accused of violating the shift-trading policy were similarly situated in all relevant respects. All the fire fighters identified as engaging in shift-trading abuses were fire fighters with the Cleveland Division of Fire; all of them reported to the Chief of the Division of Fire; all operated under the direction of the Director of Safety; all were criminally charged in Cuyahoga County Common Pleas Court; all entered guilty pleas to the same misdemeanor offense; and all received a suspended six-month sentence. However, Plaintiff was terminated from his position with the City, while the rest were suspended for nine months without pay. Plaintiff concludes that the only difference between himself and the twelve other fire fighters was his African American race.

Defendants contend that Plaintiff's misconduct far surpassed that of the other twelve charged Cleveland fire fighters; thus precluding a determination of "similarly situated." Plaintiff owed 10,098 hours of unrepaid time as compared to 5,308 hours owed by the next highest offender between 2006 and 2011. Defendant McGrath's termination order utilized terms like "incomprehensible amounts of time" and "egregious" and "failed in every way." (ECF DKT #14-14 at 3). As noted by the American Arbitration Association Arbitrator in his May 15, 2015 Opinion: "Thus, the [Plaintiff's] total of hours owed amounts to more than four (4) years of scheduled shifts of work!" (ECF DKT #2-1 at 25). The Arbitrator continued: "The massive unreciprocated hours that the [Plaintiff] owed establishes a reasonable basis for

the variation in penalties..." *Id*.

"To create an inference of disparate treatment, a plaintiff 'must prove that all of the relevant aspects of his employment situation are nearly identical to those of the employees who he alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.'" *Boggs v. Commonwealth of Kentucky*, 101 F.3d 702 (table) (6th Cir. 1996), quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). The comparison employees must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

The Court's analysis of the fourth prong of Plaintiff's prima facie claim must focus on "whether the comparators' actions were of comparable seriousness to the conduct for which Plaintiff was discharged." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) citing *Mitchell*, 964 F.2d at 583. A plaintiff "is not required to show that his proposed comparator's actions were identical to his own." *Colvin v. Veterans Admin. Med. Ctr.*, 390 F.App'x 454, 459 (6th Cir. 2010). "Even so, a plaintiff cannot establish a reasonable inference of discriminatory motive based on [the] employer's more severe treatment of more egregious circumstances." *Jackson*, 814 F.3d at 777; *Clayton*, 281 F.3d at 612.

The Court finds Defendants' argument that Plaintiff is not similarly situated to the twelve other fire fighters to be highly persuasive. The sheer number of hours owed by

Plaintiff to his employer is staggering. The Court is equally astounded by the significant gap between the amount of hours not repaid by Plaintiff and the amount of hours not repaid by the next highest abuser of the Division's shift trade policy.

> While the analysis required by *Mitchell* ... is often fact dependent and not amenable to summary disposition, that analysis does not preclude summary judgment here. * * * The employer's more severe treatment of more egregious circumstances simply cannot give rise to an inference which would support the establishment of a prima facie case of discrimination. *Clayton*, 281 F.3d at 612.

Although Plaintiff's burden is light, the Court finds that Plaintiff has failed to establish a prima facie case of race-based employment discrimination.

Even assuming for argument's sake that Plaintiff has met his prima facie burden, his claims still must fail. Defendants' legitimate reason for terminating Plaintiff's employment is that the "extent of Plaintiff's abuse of the shift-trading practice was so extensive, egregious, and inexcusable, that separation of employment was the only appropriate response." (ECF DKT #14 at 23). Now, Plaintiff must demonstrate, by a preponderance of the evidence, that Defendants' proffered reason for the adverse employment action was pretextual.

Plaintiff cannot merely express a different opinion of, or a naked suspicion about the basis for Defendants' decision to terminate his employment. For example, Plaintiff provides the Court with affidavits of two fire fighters, Kevin McCafferty and Michael Milano. (ECF DKT #17-2). McCafferty says: "In Affiant's opinion, the treatment to which Calvin Robinson was subjected was unfair." *Id*. at ¶ 24. Milano states: "Affiant is also of the opinion that the treatment to which Calvin Robinson was subjected by being terminated while other fire-fighters that did the same thing [sic] was racially discriminatory based on Calvin Robinson's African American race." *Id*. at ¶ 22. These statements are not competent

evidence. They do not assist Plaintiff in proving by a preponderance of the evidence that

Defendants' nondiscriminatory reason is suspect or untrue.

At his May 17, 2017 Deposition (ECF DKT #19-1), Plaintiff was presented with a

chart of his accrued shifts owed and was asked: "Do you have anything to contest the

accuracy of that number?" Plaintiff responded: "No, sir." (*Id*. at 7).

In his own affidavit (ECF DKT #17-2) Plaintiff says: "The fact that Affiant was

allegedly involved in the trading of more hours than other fire-fighters should have been

irrelevant since the exact number of hours actually traded and the exact identity of all of the

fire-fighters involved in the trading of shifts over the years was never accurately determined."

*Id*. at ¶ 39. Again, this is a mere expression of a difference of opinion. Plaintiff has produced

no evidence of an independent audit or expert review challenging the City's figures regarding

hours owed, nor identifying different fire-fighters involved in the abusive practice.

The Court finds that, even allowing for the establishment of a prima facie case,

Plaintiff has failed to satisfy his evidentiary burden of proving that Defendants' reason for the

adverse employment action was pretextual.

**Individual Defendants McGrath and Calvillo**

An examination of Plaintiff's Complaint reveals that Plaintiff sued Director McGrath

and Chief Calvillo in their official capacities. Furthermore, Defendants point out that

Defendant Calvillo was not even appointed as Chief until after Plaintiff's termination. (ECF

DKT #14-1 at 25, n.16). A suit against a municipal employee in his official capacity is the

equivalent of a suit against the public entity itself. *Shamaeizadeh v. Cunigan*, 338 F.3d 535,

556 (6th Cir. 2003). The Court holds that Plaintiff's Complaint cannot prevail as against

Defendants McGrath and Calvillo individually.

### III. CONCLUSION

For these reasons, and after applying the *McDonnell/Burdine* evidentiary framework, the Court determines that Plaintiff has no evidence of race discrimination, that Plaintiff cannot prove discriminatory animus on the part of the individual Defendants, Calvillo and McGrath, that Plaintiff is not similarly situated to his comparators and that the City's legitimate reason for terminating Plaintiff was not pretextual. Therefore, the Motion (ECF DKT #14) of Defendants, City of Cleveland, Michael McGrath and Angelo Calvillo, for Summary Judgment is granted.

In light of this ruling, Defendants' Motion (ECF DKT #20) to Strike Improper Affidavits is moot and the Jury Trial of this matter, set for December 4, 2017, is cancelled.

**IT IS SO ORDERED.**

                                          **s/ Christopher A. Boyko**
                                          **CHRISTOPHER A. BOYKO**
                                          **United States District Judge**

Dated: October 13, 2017